In the Matter of Alfred **HOROWITZ**,
Bankrupt.

Bankruptcy No. 55095.

United States District Court
E. D. New York.
April 17, 1959.

Louis J. Castellano, Brooklyn, N. Y., referee in bankruptcy.

David Perlow, New York City, for objecting creditor.

Harry Gilgulin, Brooklyn, for bankrupt.

BYERS, Chief Judge.

Hearing on petition to review a Referee's decision granting discharge. The bankrupt concededly made a false statement in procuring a loan from Bankers Trust Co. on December 5, 1957 in the sum of $594 payable in monthly instalments of $33.

The written loan application contained the following: "*Statement of Current Debts.*

"The total amount of all my present debts as Borrower, Endorser, Guarantor or otherwise is $ 0."

That was completely false, because he had obtained a loan from Bensonhurst National Bank of Brooklyn on August 28, 1957, less than five months earlier, of $670 payable in monthly instalments of $27.10.

His weekly salary was $135 or roughly $540 per month, of which $125 was required for rent, leaving about $415 to support himself and his family. (The application form states two dependents.)

The Bensonhurst Bank is the objecting creditor, and since this is a no-asset case, which means that its note will be wiped out if discharge is sanctioned, its arguments are entitled to receive the most careful scrutiny.

The Referee's decision cites Industrial Bank, etc. v. Bissell, 2 Cir., 219 F.2d 624, which must be consulted, particularly the discussion on page 625, as to the major factors to be established by the objecting creditor.

The Referee finds that the latter creditor has failed to meet these requirements, according to the concluding paragraph of his opinion, namely that "the bankrupt knowingly made a false statement in writing as to his financial condition, for the purpose of obtaining the loan from the Bankers Trust Company, and in addition, the objecting creditor has failed to establish that the Bankers Trust Company relied on the statement in writing (Ex. 3,), in granting the loan to the bankrupt of $594.00 on December 5, 1957."

The foregoing comes to this court under the presumption arising from General Order 47, and the record made before the Referee has been examined in

the light thereof. I am unable to agree that the testimony sustains the first two clauses above quoted, which means that in my opinion, as to those matters the decision is clearly erroneous, thus: The statement was made by the bankrupt, in writing, and was false as to the non-existence of the indebtedness to the Bensonhurst Bank. Also it was made for no other purpose then to obtain the second loan from Bankers Trust Company. The testimony as to these matters leaves nothing to conjecture or construction.

■ The remaining clause, following the words "in addition" which have to do with the failure of the objecting creditor to establish reliance by Bankers Trust Company upon the statement, presents the only close question in the case, and it is a troublesome one.

The testimony of the witness Meyer Trossman, the employee who received and approved the Bankers Trust Company application for the loan as to reliance upon the statement, was perhaps equivocal. He said that the handwriting in the application was his, from which it necessarily follows that he asked questions of the bankrupt, and wrote down the answers.

As to the crucial question of whether the application would have been granted, if the statement had disclosed the truth as to the existence of the Bensonhurst Bank loan, his testimony in summary was:

"I can't answer that."

That he did rely upon the application blank (i. e., what it showed).

"Q. If you knew at that time he had other liabilities, would you have granted the loan? A. I couldn't state that now.

"Q. * * * (Ditto in effect.)

"A. That is hard to answer what I would have done at that time."

The question being repeated in substance, he answered, after rereading the application:

"According to his income and expenses, and at that time he was pay-ing $27 monthly,—I don't think I would have approved the loan to pay an additional $33 per month.

"By the Referee: Q. You are not too sure of your position, are you, as to whether or not you would have approved the loan? A. Well, according to the income and expenses and this new loan of $33, I think it would have been a little too high for him to handle it and I think I would have denied the application."

On cross-examination for the bankrupt, he was asked in effect to explain the foregoing:

"May I ask what caused you to change your opinion? A. By reviewing the application.

"Q. Then when you answered that you don't know whether you would have granted the loan, you had not read this application? A. I had not seen that application up to now since the loan was made in 1957.

"The Referee: He took one position at the beginning and he has changed his position since."

The further cross-examination was designed to probe the witness' mental processes in reference to his handling of this application, and what would have been considered if medical and dental bills had not been mentioned as the purpose of the loan. He stated that he never objected to "the purpose of the loan being medical or dental or any other debt."

Finally,

"Q. Are there any special rules of your bank which require you to grant or deny the application based on earnings, or, is it discretionary? A. Discretionary with each and every application."

The witness was first questioned on December 15, 1958 with respect to a transaction then over a year old. Thus the first four answers quoted simply amounted to an inability to recall what happened clearly enough to enable him to tell what his probable mental processes were when he first saw the application.

The later answers were made after he had examined the application, and are consistent with an honest effort to state what he would probably have thought if the application for the loan had portrayed the true facts with respect to the bankrupt's then existing bank loan, and the exactions it would impose upon his monthly earnings.

I do not agree that the witness changed his position on the stand, so far as the record shows; he was able to be more definite after examining the application as to what he probably would have thought, than he had been when relying upon his unaided memory.

In all such transactions in these days when banks are making intensive efforts to induce all and sundry to apply for personal loans in order to make people spend money—wisely or unwisely—it is reasonable to suppose that a casual practice in handling all such matters has come to prevail. The extent to which that development has condoned actual misrepresentation in the process of negotiation, is a subject not clearly presented by this record, but the court would be blind to existing conditions if it were to exclude the possibility that a certain flexibility of the requirement for complete disclosure has come to be winked at by lending agencies.

I think that attitude is revealed in the testimony of Trossman. His earlier hesitancy in giving a clear answer in response to questions that would seem to require no reflection at all—untrue statements being conceded—is probably the reason why the Referee thought that the objecting creditor had not shown "to the satisfaction of the court that there are reasonable grounds for believing" that the Bankers Trust Company (in place of the objecting creditor) relied upon the materially false statement, in making its loan.

While I think that the objecting creditor has gone as far as it humanly could to sustain its burden, and while if the matter were before the court for initial decision a different result might have come about, it cannot be said that in this respect the decision under examination is clearly erroneous. With some misgiving, I am constrained to deny the petition for review, solely on this ground.

Settle order.